Fire away. Thank you, Your Honor. It's hard to compete with the first two cases, but I think nevertheless that this case presents an interesting case. I wouldn't concede anything away on that front. I'm glad you agree. I think it does present an important issue, and that issue is this. Can a party be deemed to have waived its right to arbitration merely by insisting that arbitration be conducted in accordance with the terms of the party's agreement? Now, I would respectfully submit that even to articulate the issue is to supply the answer, because it simply cannot be, and in no other context in the law is it the case that a party waives their rights by asserting those very same rights. Yet that's precisely what the district court did in this case. Now, the district court arrived at its conclusion, and in so doing, it made at least three significant errors, any one of which I would submit is sufficient to reverse this decision. Now, the first error made by the district court was its conclusion that JAMS declined to administer the dispute because SmartPay refused to pay the initial filing fee. Now, that finding is directly contradicted by the undisputed record evidence in this case. That evidence shows that JAMS expressly and unequivocally refused to administer the dispute unless SmartPay agreed to waive terms of the party's agreement that were inconsistent with JAMS' minimum standards. Why wasn't SmartPay, under the agreement, required to submit that issue to arbitration? Well, Your Honor, because under well-established law, the issue of arbitrability of the dispute is delegated to the arbitrator only if there's a clear and unmistakable delegation, and there is no such delegation here. In fact, for the arbitrator to decide that issue contrary to the terms of agreement would be to exceed the arbitrator's authority under the party's contract. Now, I think the important thing to consider in the context of this case is what the Supreme Court has repeatedly stated, which is arbitration is purely a matter of contract. And as a matter of contract, the powers of the arbitrator are limited by the terms of the party's agreement. So you don't think that the statement in paragraph 20, you and we agree that any claim or dispute arising from or in any way related to the agreement must be resolved by binding arbitration instead of a lawsuit commits the authority to the arbitrator to decide this question? The question of arbitrability or the question of who ought to pay what fees? No, Your Honor, because the contract, if you continue to read that very same provision, it expressly lays out a formula for the allocation of fees. So you have to read the provision as a whole, and it's expressly and specifically provides for an allocation, and it would be beyond the authority of the arbitrator to decide that differently than is provided in the contract. You say they declined to do it because of that reason, but I thought they declined to do it ab initio because you didn't pay the full filing fee, which was required under your contract. Yeah, and that is not— It is correct you refused to pay it. It's not correct, Your Honor. In fact— I thought Jams sent a note to you, a bill for it, invoice, and you refused to pay it. Well, so Jams sent a number of correspondence, each from different people and each purporting to say different things. But if you look at the order of that correspondence, well before the invoice was sent out, Jams had unequivocally said it will not— I understand that, but here's what I want you to try to focus on. Let's assume for sake of argument, and I think you do, one of those letters said pay the fee. You refused to pay the fee. I know there's some context, but that happened, right? I don't think that's correct, Your Honor. We did not refuse to pay the fee. Did you pay the fee? We never did pay the fee, correct. All right, and you had notice to pay it, and it seems to me once— I understand maybe those provisions are reconcilable, maybe they're irreconcilable, but it seems to me you had to pay the fee and at least perform that part on your contract, go to the Jams arbitrator and say, here's what our contract provides. I know you have these rules, but you all agreed to arbitrate, and then let the arbitrator decide these issues about the allocation of fees and costs. For example, you could have lost, and so you would have not been entitled to recover, right? In the arbitration, you could have lost and not been entitled to recover anything, right? Well, I think we need to be careful about what the contract says. The allocation of fees in the contract says that SmartPay will pay not only its fee, but the claimant's fee as well, and so that's what SmartPay always insisted. They always insisted— But they went ahead and paid their part $150. You didn't pay your part, or you didn't tender the whole thing, right? We did not. We were perfectly prepared. Okay, now let me stop there. Why didn't you have to go and pay that and then submit to the arbitrator the issue with regard to how the ultimate allocation of costs and fees would occur? Well, one, as I said in response to Judge Grant, that issue was not for the arbitrator to decide. That would have been exceeding his power or her power as an arbitrator because it would have been contrary to the terms of the party's agreement. But perhaps more important, when we received that invoice, we thought it was issued in error. We actually reached out to JAMS and said, this must have been an error. We assume you'll rescind it. JAMS reached out to Freeman, the appellee, and Freeman said, yes, you should dismiss my claim. So to contend that SmartPay should have paid the fee at that point is to say that SmartPay should have insisted on paying a fee for an arbitration that JAMS said it would not administer and a claim. Well, they wouldn't administer it under your provision about who wins has to pay the other party's fee. Well, it's not just a fee-shifting provision. It actually says that we would pay both initial filing fees and then the parties would pay the other costs of arbitration. At the end of the day, if you'd gone to arbitration and if your side had lost, okay, there would have been nothing inconsistent with your agreement. Would that be correct? If you'd gone to arbitration and if you'd lost the arbitration. That would not be correct, Your Honor, because the arbitration provision includes not only a fee-shifting, but that wasn't really the issue. The issue was who paid the initial filing fees. SmartPay always insisted that it should pay both initial filing fees and then any additional costs would be split equally among the parties. And so it is absolutely the case in the record that SmartPay always insisted that it should pay both filing fees but never refused to pay the initial filing fee. It only didn't pay it after it confirmed with JAMS that the invoice would be rescinded, that it need not pay it because the claimant had dismissed her claim. What do you suppose SmartPay's response would have been if Ms. Freeman had said, well, actually, I'm not going to arbitrate this case because it looks like both JAMS and the other American Arbitration Association have a rule that's inconsistent with our contract, so I'm just going to take this to court. What do you think at that point SmartPay's response would have been? I think SmartPay would insist that she submit the claim to AAA as required under the contract. No, if she looked at a AAA regulation and a JAMS regulation and concluded that both of those were inconsistent with the arbitration agreement, the contract and the arbitration agreement, and said, well, since neither of these is capable of arbitrating this agreement according to the contract, I'm taking this to court. What would SmartPay's response be to that argument? Well, one, I would say there's nothing in the record to suggest that AAA would also... I know, it's a hypothetical. Okay. But secondly, I think if it were the case that neither would arbitrate the dispute, there's a whole line of cases, and we cited them in our brief, starting with the Port Richey case. This is not a unique situation. There are many situations where the parties agree to use a certain provider, and that provider subsequently decides that it's no longer going to arbitrate those disputes. And the line of cases clearly says that does not relieve a party from their obligation to arbitrate unless they can show that the selection of that particular provider was a material provision of that agreement. So how... There hasn't been any showing of that here. So it sounds like you would not have said, well, I suppose we'll defer to Ms. Freeman's interpretation of these arbitration regulations and let her file in court. Or you would have said she still needs to go to an arbitrator and let them determine whether this is appropriate. Well, I think she should proceed before AAA. Let's not speculate what AAA is going to do. Let's not speculate that they're going to apply their own... Again, I'm not asking what happened here. I'm saying if... And let's say there was only one arbitrator in the contract, and the other party determined that the regulations of that arbitration group were inconsistent with the agreement in the contract. Could she, at that point, take it upon herself to go to court because she interpreted there to be an inconsistency? I think she could go to court. She would have to prove that the selection of that provider was a material term of the agreement, and without that term, the agreement is no longer enforceable. So did you go to court to argue that the implementation of that term was immaterial? Or was material? She did not. Right, no. Did you, in this case? We did not go to court at all. We opposed her motion to lift the stay. Right. And we opposed it vigorously on the grounds that she should be required to submit a AAA and cannot simply speculate as to what AAA would do in this instance. Because, again, it was never the rules of JAMS. It was this unwritten policy adopted by this administrator that deemed this to be a consumer arbitration, even though that policy conflicted with JAMS' own stated definition of what is a consumer arbitration. And so that was always the issue. It was never the rules. SmartPay was always prepared to... How could that have been litigated in the arbitration? The allocation of fees? No. Whether there was a consumer matter here or not. Whether JAMS' rules did govern this matter. That is, the consumer minimum standards. You're saying it was just an administrator of JAMS that said, oh, this is consumer, so we got to go over here to these set of rules. Maybe, ultimately, he might have found, or she, that it wasn't. It's possible that the arbitrator might have contradicted JAMS' own unequivocal statement. Although, JAMS never indicated that the arbitrator was empowered to do that. SmartPay never had any indication that the arbitrator was empowered to do that. But I thought you were contending it was this administrator at JAMS who... Not really the arbitrator, because you didn't even get to the arbitrator. You were just dealing with an administrator at JAMS, right? Correct. So the arbitrator could have differed from the administrator about whether this was consumer or not? It's possible. Although, if the arbitrator had done that, we would still have the problem that the arbitrator was not empowered to deviate from the allocation of the cost of the filing fee that was set forth in the agreement. Because, again, arbitration is a matter of contract. And so the arbitrator draws his power from the power that is granted to it by the arbitration provision. So the arbitrator cannot simply say, well, now that I'm empowered, I can disregard the scope of my authority and rule however I want. I have another hypothetical for you. And I'm not asking you to concede that for purposes of this case, AAA has the same rule. But let's say that AAA has the exact same rule that JAMS does with respect to this provision. At that point, would SmartPay's contention be that the entire arbitration agreement is null and void with respect to every consumer agreement? No, I don't think so, because I think we could arbitrate, even in accordance with JAMS and AAA rules, before a private arbitrator who did not apply that rule. Then why couldn't you do that here? I think we can. I think we didn't get the opportunity because Freeman ran into court and applied to lift the stay, and the court lifted the stay and said you have to proceed in court. You can no longer arbitrate the dispute. But before whom would you arbitrate it if both JAMS and AAA had this rule? There are other providers that could be used. We could agree on a retired judge. We could agree on any number of things. Or Freeman could have gone into court and said, no, using one of these two providers was a material term, and because we can't use them, the arbitration provision is no longer valid. But she didn't do that, and so she never made that showing. And so it would be speculation to assume that the court in that instance would then rule that the arbitration provision is invalid or no longer enforceable. Thank you, counsel. Thank you. Good morning, Your Honors, and may it please the court. My name is Amanda Allen, and along with my law partner, Billy Howard, we represent the plaintiff, appellee Lauren Freeman. In this case, the issue is whether SmartPay breached their own arbitration agreement by refusing to abide by JAMS rules and therefore waived their contractual right to arbitration. SmartPay would like this court to believe that JAMS was an unavailable forum. This is not true. Despite multiple requests by JAMS, SmartPay refused to pay the initial fee. As the district court correctly pointed out, this is not a matter of unavailability, but rather a refusal to participate. So is it the refusal to participate or the failure to pay that's at the core of the dispute here? There is a refusal to participate. We cannot... JAMS is a private company. We cannot and JAMS cannot proceed with a claim without the fees being paid. So by refusing to pay the initial fee, they refused to participate in arbitration. Nothing more clearly demonstrates the fact that JAMS was an available forum than the fact that since February 2018, SmartPay has agreed to pay the fee. I thought the correspondence between the parties and JAMS, it was entered into the record and it showed that JAMS informed SmartPay that it would not administer the case unless the company agreed to weigh the provisions which, quote, were contrary to our minimum standards. SmartPay declined to do so. That is to say, it declined to administer pursuant to JAMS' rules. JAMS then offered to refund the filing fee as a courtesy. SmartPay then received an invoice from JAMS. JAMS reached out to Freeman for confirmation that she agreed that the arbitration must be dismissed. And only at that point does JAMS cite nonpayment as the reason why the arbitration would be closed. Is that not correct? That is correct, Your Honor. What I would point... So wouldn't it be fair to say from that colloquy, that exchange, that the arbitration was dismissed, maybe properly, but it was dismissed because they refused to follow the JAMS minimum standards rather than because SmartPay simply declined or failed to pay a fee? I know that's what the district court went off on. The district court may have reached the right answer for the wrong reason, and that's really what I'm asking you about. You make two arguments. You say, yeah, maybe that's so, and even if the fee wasn't really the basis, it was easy enough to reconcile the agreement with what they were willing to pay. That was sort of an alternative argument you made, right? That is correct, and I agree with what you're saying, Your Honor, and if I think I understand, I don't necessarily think that the refusal to pay and the refusal to participate are necessarily different. I believe that they're actually maybe different sides of the same coin. You cannot move forward and participate in JAMS without that initial fee. So how should JAMS have handled this? Or how should SmartPay have handled this? Do you think that they were required under the arbitration agreement to submit this dispute to JAMS? Absolutely. I absolutely do. First, I would point to, in response to your question, I would point to, one, the contract itself. SmartPay has been very adamant that this is a matter of contract and should proceed under contract, and I believe it was Your Honor who pointed to the provision within the arbitration agreement, which actually states that all disputes, all disputes or claims arising from or in any way related to this agreement must be resolved by binding arbitration instead of a lawsuit. That was also then further highlighted by JAMS actually specifically offering SmartPay to move forward with selecting an arbitrator and bringing this issue of cost allocation to an arbitrator to decide. However, JAMS decided to act as their own arbitrator and refused to do so. Is it reasonable to assume that JAMS would go against its own internal procedures and rules? I think that that's very reasonable, that it could go either way. At least in my personal experience in arbitration, anything can happen. What if JAMS had a provision, what if JAMS added a provision subsequent to the agreement of this particular arbitration agreement that the company in any arbitration had to pay a $1 million bond before arbitrating any case? And let's say that SmartPay didn't have $1 million on hand. Would they be responsible to try to figure out some way to pay that $1 million? Or since that seems inconsistent with what they thought they were doing, could they get out of it at that point? Assuming your hypothetical as stated and assuming that there was no other arbitration forum available, I suppose they would have the option to either move forward as JAMS had offered with an alternative and have that matter heard by an arbitrator, or of course, they always have the opportunity to go back and have the matter heard by a judge. But if we're looking at provisions similar to the one in this arbitration agreement, they would have been, by contract, required to bring that to an arbitrator instead of a lawsuit, which is specifically laid out in their agreement. And although I understand it's a hypothetical, I do want to, just for clarification's sake, point out that the standards and the consumer standards were in place prior to the arbitration agreement between the parties, just for clarification. You defended the district court's conclusion here, arguing that, among other things, the agreement's cost allocation provision and the JAMS minimum standards can be fully reconciled, and that therefore SmartPay acted inconsistently with the arbitration right by refusing to arbitrate before JAMS, independent of the payment of that fee, right? Yes, Your Honor. That's an arguably distinct argument. That's not the argument the district court went off on. That's correct. Why don't you explain this second argument to us? Sure. So when you're reading the arbitration agreement between the parties, and you're reading the consumer minimum standards, they can absolutely be read together. First of all, the consumer minimum standards in black and white very clearly outline that they will only hear matters between consumers and companies if these minimum standards are met. So first of all, by SmartPay adding JAMS to their agreement with a consumer, one can already see and assume that they agreed to buy by these. However, assuming that that's not the case, SmartPay's agreement states that if you file a claim against us, we will pay the initial filing fee. The JAMS standard is actually more favorable to SmartPay and requires $250 to be paid by the plaintiff. So there's no conflict there. SmartPay agreement also states that the arbitrator can award reasonable fees and costs to the party who wins. JAMS rules, Rule 31G, also provides the same. SmartPay agreement states that either party must pay its own attorney's fees with another cost of arbitration. Nothing in JAMS standards require the defendant to pay any attorney's fees or extra cost of travel, depositions, experts, none of that. JAMS consumer standards require a $250 fee by the consumer. Although SmartPay's agreement does not have such a requirement, SmartPay's agreement also does not say that the fees must be allocated 50-50. Here, Ms. Freeman did, in fact, pay her fee and no additional fees or costs were to be borne by SmartPay unless, of course, Ms. Freeman succeeded and the arbitrator believed that that was the appropriate remedies. Isn't that the stronger rationale to proceed on since the argument is that the record suggests that SmartPay declined to move forward with the arbitration because it thought the JAMS rules conflicted with the arbitration agreement and it didn't want to waive its rights under the agreement as opposed to the ground the district court went off on, which was the failure to pay? Personally, I'm persuaded by both. I don't know if I could really say which is stronger. But he says the record doesn't support the first claim, that the district court's ruling was erroneous and had to be erroneous because it wasn't for the refusal to pay the fee. That's not what was going down here. And that only came up in the last iteration by the communication back from JAMS. I don't believe... I understand what Your Honor is saying, and I don't believe... That's the argument he's making. Why isn't that a good argument? It's not a good argument because JAMS... There were multiple requests by JAMS for SmartPay to pay the fee. SmartPay refused to pay, refused the offer to proceed and let the issue be determined by an arbitrator. And JAMS, in their letter, specifically stated that the reason they had to close the file was because SmartPay wouldn't pay the fee. And there's several cases on point, including Sink, that were cited in our brief, particularly that a refusal by a party to pay the initial fee is a refusal to participate. End of story. What if both JAMS and AAA had a provision in direct conflict with the provision here that SmartPay would pay the initial filing fee? What if both of those arbitration organizations had a requirement that in any consumer case, the consumer had to pay an initial filing fee of $50,000? What would your client's approach have been in that case? I suppose that there would have been several options, one of which is attempting to find a way to pay that fee. The second would be somehow to find a way to fight that arbitration agreement. Under the hypothetical, I'm not exactly sure what the other terms within that hypothetical would have been. I suppose those would have been our two options. I think it's important to look at in this case that this case is very cruxed, although we're not talking about a consumer issue. This is a consumer case. And one of the reasons that, and it is true, counsel for SmartPay has insinuated that we would be forced to speculate what would happen if we were to proceed in AAA, and I don't think that's necessary. I believe we've quoted in the record exactly what AAA's rules are, and they are identical. Actually, they're slightly less favorable to SmartPay. But this is a consumer issue, and the reason that JAMS deemed it to be handled under the minimum consumer standards was because this was a mandatory arbitration provision. And I know what SmartPay relies on is the fact that there was an ability to opt out. However, if you continue to read in the consumer minimum standards, which are published, there is a footnote in there which specifically outlines that they deem these to be mandatory in instances where they are formulaically entered into agreements with consumers where there is minimum to no bargaining between the parties regarding the procedures moving forward with that arbitration. So this was, in fact, in writing, the fact that SmartPay disagrees with JAMS interpretation is something that absolutely could have and should have been brought to an arbitrator as opposed to just refusing to participate totally. Not only did the facts support the court's order, there was nothing clearly erroneous with the district's opinion. And the majority of what SmartPay here is relying on are findings of fact. And clearly erroneous is that standard. However, a finding in the appellant's favor would set a precedent in which a corporate defendant can control where a consumer complaint is heard by refusing to pay the fee for a form they find unfavorable and then agreeing to waive that argument if they find themselves in a friendly jurisdiction, essentially undermining the arbitration system altogether. And the reason that arbitration and the FAA have such a liberal approach to arbitration is because it is favored, because it is efficient, and is expeditious resolution of claims. Here, the conduct of SmartPay has undermined both. Meanwhile, consumers are wasting time, money, and patience guessing where they can have their consumer claims heard. Here, there is no question that SmartPay listed jams as an agreeable form. There is no question that the party's agreement explicitly states that SmartPay will pay the filing fee. And SmartPay, as they have before your honors, admits they did not. Having acted inconsistently with the arbitration provision, SmartPay has waived their right to arbitrate this claim. The very purpose of dispute resolution is to save time and money. Unfortunately, here, SmartPay has done nothing but waste both. I respectfully ask that you affirm the district court's holding. Thanks very much. Thank you, your honors. Thank you, your honors. I think there have been a number of things that have been stated here that I think are not actually accurate, and I think I need to clear the record here. I think we need to be clear that jams never said that the issue of whether the fee provision could be upheld can be referred to the arbitrator. Jams said if you have, quote, additional questions for the arbitrator, you can ask them at that time. What they actually said is, quote, the parties are free to raise any additional questions regarding the consumer minimum standards. It wasn't limited to the fee. It was consumer minimum standards with the arbitrator once appointed and may participate in any strike and rank process without waiving any objections. So they said anything y'all are disputing about the minimum standards, anything here, take it up with the arbitrator, get one, you don't waive anything. Why couldn't you do that and then proceed with the arbitration? Well, I think we interpret that slightly differently. She did say raise additional questions. Did not say that... Regarding the minimum standards. Okay, consumer minimum standards. The things that you were objecting to. Correct. Consumer minimum standards. Right. That's what the letter said. We certainly did not understand them to be saying that the arbitrator was empowered to ignore jams policy and reverse the policy that it unequivocally stated. There was nothing unequivocal about the statement. We will not proceed with this unless you waive your rights. And so let's be very clear here. What Freeman is asking this court to rule is that SmartPay was required to waive certain rights in order to preserve other rights. No, I think SmartPay could have disputed before the arbitrator whether there was truly a material conflict between the arbitration clause and your lease purchase agreement and jams rules or whether they could be reconciled. See, I think all of that... She says they can be reconciled. I'm sure you say they can't be reconciled. But that's what the arbitrator could have done. Well, so we say they can't be reconciled. Jams said they can't be reconciled. Well, the plaintiff says they could be reconciled and she gave certain ways that she thought they could be reconciled. Well, we don't agree with that. But nevertheless, again, that would be beyond the scope of the power of the arbitrator. The arbitrator cannot pick and choose certain provisions in the arbitration agreement to abide by. The authority of the arbitrator derives from the party's agreement. Otherwise, the party should be in court. So you're saying that because of this issue, the case should have gone to AAA, right? Correct. What about the provision in the contract that says if we, SmartPay, file a claim against you and select an organization that is unacceptable to you, you have the right to choose the other organization if you notify us of your decision within 30 days. Is there a reverse provision of that, that if the consumer chooses an organization that is unacceptable to SmartPay, SmartPay can fight that? There is not. But SmartPay would be perfectly happy to arbitrate before Jams if Jams would arbitrate consistent with the agreement. So SmartPay never said, you can't arbitrate before Jams. It said, let's arbitrate before Jams, but let's do it consistent with the party's agreement. I'm still confused. Why couldn't you have paid the filing fee, as you expressly agreed to do, and then brought up this issue about whether there was truly a conflict in your clause and Jams' rules, or whether they could be recognized? Well, so we could have, presumably, we could have proceeded with the arbitrator. The arbitrator could have made a ruling contrary to the party's agreement, in which case we would have sought to vacate. But in every arbitration case, some people argue that what the arbitrator did doesn't comply with the agreement. That's not a novel claim. It's not, but it would be very clear in this case that that would be outside of his scope. So we would vacate any negative decision. We would go to the district court, and we would vacate it, and that would waste even more time. No, we'd have a decision here by the arbitrator. She may not recover anything, so it would be over you. It's nothing for you to vacate. The arbitrator could have reconciled the agreement somehow. Then, at the end of the day, if you were dissatisfied, you could have said, well, the arbitrator lacked power, and go to the district court. My problem is why this doesn't get reconciled at the front end by the arbitration, given everything in your clause, your agreement. And again, I would say that that's beyond the scope of the power of the arbitrator to rule. And so it looks like my time is up, but I would just say all SmartPay, the record is absolutely consistent that it never refused to arbitrate. JAMS refused to arbitrate consistent with the party's agreement. SmartPay was always willing to arbitrate before JAMS, before AAA, before any provider, and it just wanted to do that consistent with the terms of the party's agreement. Thank you much. Thank you, counsel. This court will be in recess until 9 a.m.